UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| John Harvey, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. |
| | ) | |
| vs. | ) | |
| | ) | |
| TriNetX, LLC, | ) | |
| Shields Carstarphen, | ) | |
| Jennifer Eagan, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT AND DEMAND FOR TRIAL BY JURY

### Jurisdiction

1.      Jurisdiction of Counts I - III is conferred by 28 U.S.C. 1331, as these Counts arise under the laws of the United States.

2.      Jurisdiction of Counts IV - X is conferred by pendent and/or supplemental jurisdiction pursuant to 28 U.S.C. 1367.

### Parties

3.      The Plaintiff, John Harvey ("Harvey"), is a citizen of the Commonwealth of Massachusetts, and resides 33 Mayflower Drive, Wenham, MA  01984.

4.      The Defendant, TriNetX, LLC ("TriNetX"), is a limited liability company with a principal place of business at 125 Cambridgepark Drive, Suite 500, Cambridge, MA 02140.

5.      The Defendant, Shields Carstarphen ("Carstarphen"), is a citizen of North

1

Carolina.

6.      The Defendant, Jennifer Eagan ("Eagan"), is a citizen of the Commonwealth of

Massachusetts.

Facts

7.      Harvey is a devout Catholic.

8.      Harvey suffers from Atrial Fibrillation and generalized anxiety. These

medical/mental health conditions substantially limit him in one or more major life activities,

including thinking, concentrating, communicating, sleeping, and working.

9.      Despite these limitations Harvey has been able to succeed in his working life with

or without reasonable accommodations.

10.     On or about April 22, 2019, Harvey commenced employment with TriNetX as

Sales Director, Pharma. According to its website, TriNetX is a federated network of healthcare

organizations that works with industry partners to commercialize real-world data products and

services.

11.     From the commencement of Harvey's employment until in or around early 2023,

he reported to Tim Keliher, SVP Global Sales. Keliher in turn reported to Brian Flaherty, Chief

Commercial Officer. During this period, Harvey met or exceeded expectations in his

performance evaluations, including both peer and direct report evaluations. He additionally met

or exceeded his sales goals.

12.     Because of his superior performance, in or around the first quarter of 2022, Harvey was promoted to the position of _de facto_ Senior Director, Commercial Sales, continuing to report to both Keliher and Flaherty.

13.     In this role, Harvey oversaw a seven-person sales team while continuing to pursue his own sales opportunities. In this new position, he continued to meet or exceed the performance expectations of both his manager and direct reports, while again exceeding sales goals.

14.     In or around mid-January, 2023 Flaherty was replaced by Carstarphen. Carstarphen had initially been retained by TriNetX as a consultant in or around the Fall of 2022.

15.     Throughout the first quarter of 2023, despite numerous promises to do so, neither Harvey nor his team were provided with their 2023 compensation plans.

16.     This was despite Keliher's representations to Harvey that he had provided Harvey's plan to Carstarphen and that she would approve the same with, at most, "very minor tweaks." Keliher physically showed Harvey his 2023 plan after providing it to Carstarphen.

17.     Keliher resigned from TriNetX in or around February, 2023.

18.     On or about March 6, 2023, Harvey met with Carstarphen concerning a poor-performing employee on his team ("Employee 1"). Multiple individuals at TriNetX had raised concerns regarding Employee 1 during and even prior to Employee 1's hire in August of 2022.

19.     Harvey had contacted Carstarphen in or around January, 2023, expressing concerns regarding Employee 1. Carstarphen agreed, and requested that he provide her with

documentation supporting the same, which Harvey provided on or about February 28, 2023.

20.    During the March 6 meeting, Carstarphen stated that Employee 1 was not a fit for TriNetX and further informed Harvey that the separation process for Employee 1 would commence. Carstarphen praised Harvey's handling of the situation, and then provided him with positive feedback concerning his overall performance.

21.    In that regard, Carstarphen stated to Harvey that she was getting all that she needed from him, that he was on top of things, that he was doing a great job leading the team, that he was on top of the team's pipeline, and that she could not ask for anything more from him.

22.    Later that day, Harvey met with Employee 1 at Employee 1's request, purportedly concerning a sales prospect. After very briefly discussing the prospect, Employee 1 falsely accused Harvey of workplace "bullying" and provided several false examples concerning the same.

23.    In addition to being categorically false, the allegations flew in the face of the lavish praise for Harvey that Employee 1 had submitted in their direct report comments on Harvey's performance evaluation in or around December, 2022.

24.    In their evaluation of Harvey, Employee 1 praised Harvey, *inter alia,* for

> -his job knowledge
> -being pleasant to work with, patient, upbeat and willing to assist the team
> -his communication skills, both with the team and in one-on-one meetings
> -welcoming Employee 1's suggestions and taking them seriously
> -making Employee 1's job easier regarding the sales process
> -being fair with lead distribution
> -not micro-managing, leaving Employee 1 to develop their own sales style

-being a leader, mastering skills and teaching them well
-being an excellent manager
-being upbeat
-having a democratic leadership style
-asking for input from the team
-giving Employee 1 positive reinforcement
-caring about Employee 1 personally and professionally
-creating an inclusive environment for collaboration
-framing mistakes as learning opportunities
-being a positive energizer
-regularly recognizing Employee 1 for contributions and celebrating wins
-granting Employee 1 autonomy and allowing Employee 1 to be self-directed
-regularly removing roadblocks that inhibit Employee 1's progress
-being someone Employee 1 wants to follow
-understanding Employee 1 and their work preferences
-setting work goals together and including Employee 1 in the process
-providing Employee 1 with personalized opportunities for growth
-asking Employee 1 for feedback on how he (Harvey) is doing in his role
-providing constructive feedback

25.     Immediately after his meeting with Employee 1, Harvey telephoned Eagan, Vice-President of People (HR) at TriNetX, and related what had occurred in the meeting with Employee 1. Eagan told Harvey not to worry, that Employee 1 had been a problem "from day one," that Employee 1 "needs to go," and that "everybody knows" that Harvey would never engage in any of the conduct Employee 1 had accused him of.

26.     Harvey additionally telephoned Carstarphen, who responded in a similar fashion, likewise telling him not to worry. Harvey then transmitted an email to both Eagan and Carstarphen detailing his meeting with Employee 1, and providing point by point responses to Employee 1's false allegations against him.

27.     On or about March 17, 2023 Harvey met with Carstarphen concerning the

5

Employee 1 situation. In a complete reversal to both Carstarphen and Eagan's prior statements and assurances, Carstarphen informed him that TriNetX would take no position concerning the matter. She additionally stated that Harvey would be required to undergo training on workplace bullying, and further stated he could have handled the matter differently. When Harvey disagreed and respectfully requested examples, Carstarphen was unable to provide any.

28.     Carstarphen then questioned Harvey's desire to be in a leadership role with the company, and further stated, "I won't be able to bail you out like this every time, John!" Carstarphen ended the meeting by stating to Harvey, "I think you have a lot of soul-searching to do, John." Carstarphen's tone throughout the meeting was aggressive and demeaning.

29.     While Harvey was completely blind-sided and taken aback by Carstarphen's statements, as a devout Catholic he was deeply shaken by her "soul-searching" remark.

30.     Following the meeting with Carstarphen, Harvey began experiencing heart palpitations, insomnia, and other symptoms associated with work-related stress and anxiety.

31.     Stress and anxiety may contribute to increased episodes of atrial fibrillation.

32.     On March 19, 2023 Harvey emailed Carstarphen and two other TriNetX employees that he would be absent from work for several days that week "due to medical reasons." Despite this, Carstarphen sent him several emails requesting that he contact her and otherwise requesting business-related information.

33.     On or about March 20, 2023 Harvey met with his doctor, who later provided a note excusing him from work for March 20 and 21, 2023.

34.     TriNetX and Eagan have been aware of Harvey's Atrial Fibrillation diagnosis since approximately June, 2021.

35.     On March 21, 2023 Harvey transmitted an email to Eagan stating that his absences were due to "a confidential medical matter," that he would return to work the following day, and that he would be able to provide a doctor's note concerning the same.

36.     Also on March 21, 2023 Harvey transmitted a separate email to Eagan concerning the March 17, 2023 meeting with Carstarphen. He specifically referenced the "soul-searching" remark, stating, "As a devout Catholic, the integrity of my soul is of extreme importance to me. I received this statement by Shields as being extremely offensive, hurtful, judgmental, and entirely unappreciated. I request that Shields please never speak to me like that again."

37.     Harvey further stated that he would like to make a formal complaint against Carstarphen for "harassment and workplace bullying."

38.     On or about March 22, 2023 Harvey met with Carstarphen at Carstarphen's request. In the meeting, Carstarphen falsely stated that Harvey failed to communicate to her that he would be absent from work. As set forth above, he had emailed her on March 19, 2023 concerning his absence for medical reasons.

39.     Carstarphen additionally criticized Harvey for not responding to her emails while he was absent. He responded that he was absent and unable to respond for medical reasons. She additionally chastised Harvey for failing to inform her of the length of his absence, to which responded that he did not know at the time.

7

40.     Carstarphen then falsely accused Harvey of not communicating to her that he would be returning to work that day. In fact, in response to a March 21, 2023 email from Carstarphen upon which Harvey had been copied, he responded that he would be at work the following day.

41.     Finally, Carstarphen stated that Harvey's failure to communicate with her concerning his absence was "unacceptable," referred to his two-day absence as an "extended period," and further stated, "You didn't meet my expectations how to support the team during the time you were out."

42.     For his brief two-day absence for medical reasons, Harvey had placed an away message on his email, directing individuals to Carstarphen and providing her contact information.

43.     On or about March 23, 2023, at Eagan's request, Harvey emailed her his doctor's letter excusing him from work for March 20-21. At no other time during his employment with TriNetX was Harvey ever asked to provide medical documentation for such a short absence. Nor was Harvey aware of any other TriNetX employee being asked to do so.

44.     Also on or about March 23, 2023 Harvey met with Eagan, again at Eagan's request. Eagan accused him of "twisting" the complaint from Employee 1 into his allegations against Carstarphen, and further remarked that "everything" Carstarphen had stated to him at the March 22, 2023 meeting was what Eagan and TriNetX's attorneys had instructed her to say.

45.     Harvey reminded Eagan that both she and Carstarphen had initially supported him

and assured him that he had acted properly concerning Employee 1. He further stated that he took great issue with Carstarphen's complete reversal regarding Employee 1, specifically referencing the "soul-searching" remark, and her treatment of him concerning his absence for medical reasons.

46.     Eagan then raised, for the first time, several false allegations against Harvey concerning his communication style.

47.     Throughout his employment with TriNetX, Harvey consistently met or exceeded expectations for his communication skills in his manager and direct report evaluations.

48.     Toward the end of the meeting, Eagan asked Harvey what he "want[ed]." He responded by requesting only that Carstarphen state that she was not targeting him, that she did not intend for her words to be received by him in the manner that they were, and agree to move forward together in good faith. Eagan responded by stating that she would schedule a lunch meeting with herself, Carstarphen, and Harvey for the following week, and that six months later they all would be "laughing our asses off about all of this."

49.     After further consultation with his healthcare professionals, on March 27, 2023 Harvey transmitted an email to Eagan informing her that he would be requesting "intermittent FMLA leave to attend appointments as needed" and further requested information concerning the next steps in the process. Although he was copied on Eagan's email to a colleague instructing her to assist him with his FMLA request, he was never contacted by anyone at TriNetX or provided any information, forms or documentation concerning the same, despite at least one follow up

request by Harvey.

50.     Additionally on or about March 27, 2023, Harvey informed Carstarphen that he would be applying for intermittent FMLA leave and had requested paperwork concerning the same.

51.     Two days later, on or about March 29, 2023 Harvey was called into a meeting with Eagan and Carstarphen whereupon his employment with TriNetX was involuntarily terminated.

52.     At the meeting, Carstarphen gave contradictory reasons for Harvey's termination, initially stating that his position was being eliminated, then stating that he was being terminated because his relationship with Carstarphen had not been "going well."

53.     Eagan added that she discussed the March 23, 2023 meeting between Carstarphen and Harvey, the meeting in which Carstarphen made demonstrably false allegations concerning his communications with her regarding his absences for medical reasons, and concluded that Carstarphen's and Harvey's work relationship was "irreparable."

54.     These stated reasons for Harvey's termination were false and a pretext for unlawful employment discrimination and retaliation.

55.     Eagan further stated to Harvey that she and Carstarphen had decided to compensate him for his first quarter 2023 sales commissions under his 2022 compensation plan as opposed to his 2023 plan. As of his termination, Harvey had still not received his 2023 compensation plan.

56.     Upon information and belief, Defendants created Harvey's 2023 compensation plan, after the fact, to ensure significantly lower payments to him, in further retaliation for Harvey's above protected conduct.

57.     Based upon his understanding of his 2023 plan as communicated to him by Keliher, as well as the plan ultimately provided following his termination, Harvey would have received significantly higher first quarter commissions under the 2023 compensation plan related to him by Keliher, as opposed to the 2022 plan.

58.     TriNetX additionally terminated Harvey in order to deprive him of sales commissions he would have been otherwise entitled to.

59.     Harvey was provided with his 2023 compensation plan only after his involuntary termination.

60.     Upon information and belief, Defendants altered or amended the plan in order to deprive Harvey of sales commissions and/or other renumeration he would have otherwise been entitled to.

61.     TriNetX subsequently refused to compensate Harvey for his first quarter 2023 commissions unless he executed a general release.

62.     Although terminated on March 29, 2023, Harvey did not receive his final paycheck until March 31, 2023.

63.     Harvey additionally did not receive any sales commissions for 2023.

64.     He did receive a non-discretionary bonus payment, but long after his termination.

65.     Subsequent to Harvey's termination, TriNetX alleged an altogether different reason for his termination from those stated at his firing, "poor treatment of female employees." This allegation was completely false and a further pretext for unlawful employment discrimination and retaliation.

66.     At all times relevant herein, Carstarphen and Eagan were managerial, supervisory and/or human resource employees and officers of TriNetX, having control over the terms and conditions of Harvey's employment, including without limitation control over his termination, work schedules, rate and method of payment, employment records, and had personal responsibility for making decisions that contributed to above conduct against Harvey.

67.     The above acts of all Defendants have caused Harvey to suffer lost wages, lost income earning capacity, emotional distress, and to be otherwise damaged.


COUNT I
The Family and Medical Leave Act of 1993
29 U.S.C. 2601, et seq.
<u>All Defendants</u>

68.     The Plaintiff adopts by reference all above allegations, and further alleges:

69.     All conditions precedent to this Count, if any, have been complied with.

70.     Harvey is an eligible employee, as defined by 29 U.S.C. § 2611.

71.     TriNetX is an employer, as defined by 29 U.S.C. § 2611.

72.     By virtue of their supervisory control over the terms and conditions of Harvey's

employment, Eagan and Carstarphen were additional employers of Harvey under this section.

73.     The above described acts of all Defendants, committed by and through its authorized agents and employees, interfered with, restrained, or denied the exercise or attempted exercise by Harvey of rights protected by 29 U.S.C. 2601, et seq.

74.     Harvey was terminated and otherwise discriminated against in retaliation for excising rights under 29 U.S.C. 2601, et seq., and/or for opposing practices made unlawful by 29 U.S.C. 2601, et seq.

WHEREFORE, the Plaintiff, John Harvey, demands judgment against all Defendants in an amount reasonably calculated to adequately compensate him for his injuries, together with interest, reasonable attorney's fees, and the costs of this action.

COUNT II
The Americans With Disabilities Act
42 U.S.C. 12112a, et seq.
TriNetX

75.     The Plaintiff adopts by reference all above allegations, and further alleges:

76.     All conditions precedent regarding this Count have been complied with.

77.     Harvey is a qualified individual with a disability under this section.

78.     TriNetX failed to reasonably accommodate Harvey's known disabilities and otherwise discriminated against him concerning benefits, terms, and conditions of his

13

employment on account of his disabilities.

79.     The above described discrimination directed against Harvey had the purpose or effect of unreasonably interfering with his work performance and/or creating an intimidating, hostile, or offensive working environment.

80.     A reasonable person under the same or similar circumstances would have had his work performance interfered with and/or psychological well-being seriously affected, and Harvey's work performance and/or psychological well-being were so affected.

81.     Harvey was subject to retaliation by TriNetX for asserting rights under this section, and/or for opposing acts made unlawful by this section.

82.     TriNetX's above stated conduct was willful, malicious, in bad faith, outrageous and extraordinary, thereby giving rise to an award of punitive damages.

        WHEREFORE, the Plaintiff, John Harvey, demands judgment against TriNetX in an amount reasonably calculated to adequately compensate him for his injuries, together with punitive damages, interest, reasonable attorney's fees, and the costs of this action.


COUNT III
Title VII of the 1964 Civil Rights Act, as Amended
42 U.S.C. 2000e, et seq.
TriNetX

83.     The Plaintiff adopts by reference all above allegations, and further alleges:

14

84.    All conditions precedent regarding this Count have been compiled with.

85.    Harvey was subjected to unlawful discrimination by TriNetX in the benefits, terms, and conditions of his employment, as set forth above, because of or on the basis of his religion.

86.    The above described discrimination directed against Harvey had the purpose or effect of unreasonably interfering with his work performance and/or creating an intimidating, hostile, or offensive working environment.

87.    A reasonable person under the same or similar circumstances would have had his work performance interfered with and/or psychological well-being seriously affected, and Harvey's work performance and/or psychological well-being were so affected.

88.    Harvey was subject to retaliation by TriNetX for asserting rights under this section, and/or for opposing acts made unlawful by this section.

89.    TriNetX's above stated conduct was willful, malicious, in bad faith, outrageous, and extraordinary, thereby giving rise to an award of punitive damages.


WHEREFORE, the Plaintiff, John Harvey, demands judgment against TriNetX in an amount reasonably calculated to adequately compensate him for his injuries, together with punitive damages, interest, reasonable attorney's fees, and the costs of this action.

COUNT IV
Massachusetts Paid Family and Family Leave
Mass.G.L. c. 175M
<u>All Defendants</u>

90.     The Plaintiff adopts by reference all above allegations, and further alleges:

91.     All conditions precedent regarding this Count have been complied with.

92.     Harvey is an employee under this chapter.

93.     TriNetX is an employer under this chapter.

94.     By virtue of their control over the terms and conditions of Harvey's employment,
Eagan and Carstarphen are additional employers under this chapter.

95.     Harvey was subjected to retaliation by all Defendants for exercising rights under
this chapter, and/or opposing unlawful conduct under this chapter.

        WHEREFORE, the Plaintiff, John Harvey, demands judgment against all Defendants in
an amount reasonably calculated to adequately compensate him for his injuries, together with
treble damages, interest, reasonable attorney's fees, and the costs of this action.

COUNT V
Mass.G.L. c. 151B
<u>All Defendants</u>

96.     The Plaintiff adopts by reference all above allegations, and further alleges:

97.     All conditions precedent regarding this Count have been complied with.

98.     Harvey was subjected to unlawful discrimination by all Defendants in the benefits, terms, and conditions of his employment, as set forth above, on the basis of disability/handicap and religion.

99.     The above-described discrimination directed against Harvey had the purpose or effect of unreasonably interfering with his work performance and/or creating an intimidating, hostile, or offensive working environment.

100.    A reasonable person under the same or similar circumstances would have had his work performance interfered with and/or psychological well-being seriously affected, and Harvey's work performance and/or psychological well-being were so affected.

101.    Carstarphen and Eagan aided, abetted, incited, compelled and/or coerced the doing of any of the acts forbidden under Mass.G.L. c. 151B and/or attempted to do so, and interfered and/or attempted to interfere with Harvey's rights under this chapter.

102.    Harvey was subjected to retaliation by all Defendants for asserting his rights and/or opposing unlawful discrimination under this chapter.

103.    Defendants' above stated conduct was willful, malicious, in bad faith, outrageous, and extraordinary, thereby giving rise to an award of punitive damages.


WHEREFORE, the Plaintiff, John Harvey, demands judgment against all Defendants in an amount reasonably calculated to adequately compensate him for his injuries, together with punitive damages, interest, reasonable attorney's fees, and the costs of this action.

COUNT VI
Massachusetts Wage Act
Mass.G.L. c. 149 §148
<u>All Defendants</u>

104.     The Plaintiff adopts by reference all above allegations, and further alleges:

105.     All conditions precedent regarding this Count have been compiled with.

106.     As defined by this chapter, TriNetX, Carstarphen, and Eagan were each Harvey's employers.

107.     As set forth above, all Defendants failed to timely pay Harvey wages, including commissions and bonuses, earned by him.

WHEREFORE, the Plaintiff, John Harvey, demands judgment against all Defendants in an amount reasonably calculated to adequately compensate him for his injuries, together with treble damages, interest, reasonable attorney's fees, and the costs of this action.

COUNT VII
Breach of Implied Contract
<u>TriNetX</u>

108.     The Plaintiff adopts by reference all above allegations, and further alleges:

109.     Based upon the conduct of the parties and attendant circumstances, including without limitation the representations made to Harvey and Harvey's continued employment with TriNetX in 2023, an implied employment contract existed between Harvey and TriNetX, and

18

constituted a binding contract concerning the amount of his 2023 compensation, including

commissions and bonuses.

110.    Through its above conduct, TriNetX breached the said contract with Harvey,

causing him damages.


WHEREFORE, the Plaintiff, John Harvey, demands judgment against TriNetX in an

amount reasonably calculated to adequately compensate him for his injuries, together with

interest, and the costs of this action.


COUNT VIII
Breach of the Covenant of Good Faith and Fair Dealing
TriNetX

111.    The Plaintiff adopts by reference all above allegations, and further alleges:

112.    Through its above conduct, including without limitation failing to pay Harvey all

wages due him, failing to provide Harvey with his 2023 compensation plan until subsequent to

his involuntary termination, involuntarily terminating his employment under false pretenses in

order, *inter alia,* to deprive him of earned commissions, and/or altering or amending his 2023

compensation plan in order to deprive him of earned commissions he would have otherwise been

entitled to, TriNetX breached the covenant of good faith and fair dealing implicit in Harvey's

employment with TriNetX.

19

WHEREFORE, the Plaintiff, John Harvey, demands judgment against TriNetX in an amount reasonably calculated to adequately compensate him for his injuries, together with interest, and the costs of this action.

COUNT IX
Unjust Enrichment
TriNetX

113.    The Plaintiff adopts by reference all above allegations, and further alleges:

114.    Through his employment, Harvey conferred a benefit upon TriNetX.

115.    TriNetX appreciated and/or were aware of the benefit.

116.    Through its above conduct, including without limitation failing to pay Harvey all wages due him, failing to provide Harvey with his 2023 compensation plan until subsequent to his involuntary termination, involuntarily terminating his employment under false pretenses in order, *inter alia,* to deprive him of earned commissions, and/or altering or amending his 2023 compensation plan in order to deprive him of earned commissions he would have otherwise been entitled to, TriNetX accepted and/or retained the benefit without paying Harvey for its value, and TriNetX's conduct in this regard were therefore inequitable.

WHEREFORE, the Plaintiff, John Harvey, demands judgment against TriNetX in an amount reasonably calculated to adequately compensate him for his injuries, together with interest, and the costs of this action.

COUNT X
Quantum Meruit
<u>TriNetX</u>

117.    The Plaintiff adopts by reference all above allegations, and further alleges:

118.    As set forth above, Harvey rendered services to TriNetX.

119.    Harvey rendered such services with the reasonable expectation that he would be compensated pursuant to TriNetX's above representations concerning the terms of his 2023 compensation plan.

120.    TriNetX, having reason to believe that Harvey was acting with the expectation of being paid pursuant to its representations concerning the terms of his 2023 compensation plan, permitted Harvey to act without objection, causing Harvey to be damaged.

WHEREFORE, the Plaintiff, John Harvey, demands judgment against TriNetX in an amount reasonably calculated to adequately compensate him for his injuries, together with interest, and the costs of this action.

COUNT XI
Intentional Interference with Employment, Contractual and/or Advantageous Relations
<u>Carstarphen and Eagan</u>

121.    The Plaintiff adopts by reference all above allegations, and further alleges:

122.    Through their above stated actions, Carstarphen and Eagan knowingly and intentionally induced TriNetX to break or alter its at-will employment, contractual and/or

advantageous relationship with Harvey, and a breaking or altering of said contract and/or employment relationship by TriNetX in fact occurred, causing Harvey to lose employment, contractual and/or advantageous rights.

123.    The above said acts of Carstarphen and Eagan were wrongful or improper in their ways and/or means because said acts were made without any rational basis, in bad faith, with actual malice, with a discriminatory and retaliatory animus, and were otherwise improper.


WHEREFORE, the Plaintiff, John Harvey, demands judgment against Carstarphen and Eagan in an amount reasonably calculated to adequately compensate him for his injuries, together with interest, and the costs of this action.

<u>THE PLAINTIFF DEMANDS A TRIAL BY JURY UPON ALL COUNTS</u>

Respectfully submitted,
John Harvey
By his attorney,

*Paul F. Wood*

_____
Paul F. Wood, BBO 565195
Law Office of Paul F. Wood, P.C.
45 Bowdoin Street
Boston, Massachusetts  02114
P: (617) 532-2666
F: (617) 532-2667
pwood@paulwoodlaw.com