UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN HARVEY, | Civil Action No.: 1:23-cv-12798 |
| Plaintiff, | |
| v. | |
| TRINETX, LLC, SHIELDS CARSTARPHEN, and JENNIFER EAGAN, | |
| Defendants. | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS OR STRIKE**

Defendants TriNetX, LLC ("TriNetX"), Shields Carstarphen ("Ms. Carstarphen"), and Jennifer Eagan ("Ms. Eagan") (collectively "Defendants") hereby move to dismiss Counts III, IV, VI, VII, VIII, and XI, and strike portions of Counts I and V asserted in Plaintiff's Complaint. Plaintiff has made a number of employment-related claims against his former employer, TriNetX, his former supervisor, Ms. Carstarphen, and TriNetX's Human Resources Director, Ms. Eagan.

By way of background, Plaintiff is a workplace bully. On March 6, 2023, a female TriNetX employee (the "Victim") complained that Plaintiff had engaged in workplace bullying and she provided several examples of his misconduct. TriNetX promptly investigated the Victim's claims and found them to be credible. In part, based upon Plaintiff's own admissions during TriNetX's investigation. On March 17, 2023, Ms. Carstarphen met with Plaintiff informing him that he would need to undergo training on workplace bullying as a result of the TriNetX workplace investigation. Plaintiff disagreed with the conclusions of TriNetX. During the course of this conversation between Plaintiff and Ms. Carstarphen regarding training on workplace bullying, Plaintiff alleges Ms. Carstarphen mentioned that Plaintiff had some soul-searching to do. This single, innocuous remark forms the entire basis of Plaintiff's claim for religious discrimination contained in the

Complaint. Plaintiff's claim for religious discrimination in Count III and a portion of Count V of the Complaint clearly fails on its face as a matter of law.

Counts VI (Massachusetts Wage Act), VII (Breach of Implied Contract), and VIII (Breach of Good Faith and Fair Dealing), are all based on the same factual allegations. Specifically, Plaintiff alleges "upon information and belief," Defendants created his 2023 compensation plan after his separation from employment to provide him with lower commissions. Plaintiff admits he received a bonus payment after his termination of employment. Plaintiff's bare allegations do not meet the required elements for Counts VI through VIII of the Complaint to survive dismissal.

Plaintiff alleges in Count I of the Complaint that he requested "intermittent FMLA leave to attend appointments **as needed**" two days before his separation from employment. Plaintiff's request for intermittent FMLA qualification on an "as needed" basis does not support a claim for FMLA interference. Plaintiff was never denied an FMLA benefit to which he was entitled. These same grounds support dismissal of plaintiff's retaliation claim under the MA Paid Family and Medical Leave Act in Count IV of the Complaint, as well. Accordingly, Plaintiff's claim for FMLA interference and PFMLA retaliation should be stricken.

Finally, Plaintiff alleges in Count XI of the Complaint that Ms. Carstarphen and Ms. Eagan intentionally interfered with a contract between plaintiff and TriNetX. That said, Plaintiff fails to include facts to support his recitation of the claim's elements, in that there are no factual allegations alleging any intentional or malicious conduct on the part of either Ms. Carstarphen or Ms. Eagan. There are no facts alleged indicating they took actions because they wanted to harm Plaintiff, rather than because they believed their actions benefitted TriNetX's business interests. Accordingly, Count XI must be dismissed.

Defendants therefore move under Rule 12(b)(6) to dismiss Counts II, III, IV, VI, VII, VIII,

and XI of the Complaint and to strike, narrow and clarify the issues by striking portions of Counts I and V for failing to state plausible claims for relief.

## I.     STATEMENT OF FACTS[1]

According to the Complaint, TriNetX is a federated network of healthcare organizations that works with industry partners to commercialize real-world data products and services. Compl. ¶10.  TriNetX hired Plaintiff as a Sales Director, Pharma on or about April 22, 2019. *Id*. From the commencement of Plaintiff's employment until in or around early 2023, he reported to two male supervisors in which he claims he met or exceeded expectations in his performance evaluations. *Id*. at ¶11.  In or around mid-January 2023, Plaintiff's supervisor was replaced by Ms. Carstarphen, who had initially been retained by TriNetX as a consultant in or around Fall 2022. *Id*. at ¶14.

On or about March 6, 2023, Plaintiff met with Ms. Carstarphen concerning a poor-performing employee on his team. *Id*. at ¶18.  Later that day, this same employee (the "Victim") accused Plaintiff of workplace bullying and provided several examples, which he claims were false. *Id*. at ¶22.  Plaintiff promptly contacted both Ms. Carstarphen, and Human Resources Director, Ms. Eagan, regarding the Victim's allegations. *Id*. at ¶¶25-26.  After an investigation of the Victim's allegations, Plaintiff met with Ms. Carstarphen on March 17, 2023 regarding these allegations. *Id*. at ¶27.  Ms. Carstarphen found the allegations to be credible and informed Plaintiff at this meeting he would need to undergo training on workplace bullying. *See id*.  Plaintiff disagreed with Ms. Carstarphen's conclusion. *Id*. at ¶28.  In response, she informed Plaintiff she would not be able to "bail [Plaintiff] out like this every time" and ended the meeting stating "I think you have a lot of soul-searching to do." *Id*. at ¶28.   Plaintiff, an alleged devout Catholic,

---

[1] Facts taken directly from Plaintiff's Complaint shall be considered true for the purposes of this motion only.  Defendants reserve the right to contest the truth of each and every allegation (factual or otherwise) contained in the Complaint should this motion be denied.

3

claims he was "deeply shaken" by this single reference to soul-searching. *Id.* at ¶29.

After meeting with Ms. Carstarphen about the Victim's allegations against Plaintiff, Plaintiff was absent from work "due to medical reasons" on March 19-21, 2023 which he claims to be due to stress and anxiety. *Id.* at ¶¶30-33. While on leave, Plaintiff informed Ms. Eagan that he would like to make a formal complaint against Ms. Carstarphen for "harassment and workplace bullying" even though TriNetX had already found that Plaintiff had engaged in such conduct. *See id.* at ¶37. On or about March 23, 2023, Plaintiff also met with Ms. Eagan. *Id.* at ¶44. Ms. Eagan informed Plaintiff that he was "twisting" the Victim's workplace harassment complaints against him to a complaint against Ms. Carstarphen who was only acting on the advice of counsel in investigating and communicating with Plaintiff regarding the Victim's claims. *Id.* at ¶44. Ms. Eagan also raised additional allegations that had been made against Plaintiff during this meeting. *Id.* at ¶46.

On March 29, 2023, Plaintiff was called into a meeting with Ms. Eagan and Ms. Carstarphen to inform him of the decision by TriNetX to terminate his employment as his relationship with Ms. Carstarphen had not been going well. *Id.* at ¶¶51-52. TriNetX's reason for Plaintiff's termination was due to his "poor treatment of female employees" (including Victim, Ms. Carstarphen, and Ms. Eagan). *Id.* at ¶65. He now brings this lawsuit in an attempt to retaliate against Ms. Carstarphen and Ms. Eagan for conducting an appropriate and legally required workplace investigation of his misconduct.

Plaintiff alleges "upon information and belief," Defendants created his 2023 compensation plan after his separation from employment to provide him with lower commissions. *Id.* at ¶¶56, 60. Plaintiff received a bonus payment after his termination of employment. *Id.* at ¶64.

Plaintiff's Complaint alleges a violation of the FMLA (Count I) based only upon his

request to Ms. Eagan for "intermittent FMLA leave to attend appointments as needed" two days before his separation from employment. *Id*. at ¶49. Ms. Eagan emailed a colleague instructing her colleague to assist Plaintiff with his FMLA paperwork. *Id*. TriNetX terminated Plaintiff's employment two days later. There is no allegation contained in the Complaint that Plaintiff sought FMLA leave on any particular day. Accordingly, there are no facts supporting Plaintiff's FMLA interference claim and paragraph 73 relating to "interference" should be stricken from the Complaint. Defendants are not seeking dismissal of Plaintiff's FMLA retaliation claim at this time, which is alleged in paragraph 74 of the Complaint.

## II.     LEGAL ARGUMENT

### A.     Standard of Review

Federal Rule of Civil Procedure 12(b)(6) authorizes the filing of a motion to dismiss where the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must provide more than a formulaic recitation of a claim's elements that amount to mere labels and conclusions. *Id.*

### B.     Plaintiff's Claim for Religious Discrimination Based upon "Soul-Searching" Comment in Counts III and V of the Complaint Should be Dismissed

Plaintiff's allegations regarding religious discrimination/harassment are entirely premised upon a meeting on March 17, 2023 in which Ms. Carstarphen informed Plaintiff he would need to undergo training on workplace bullying and in which she ended the meeting stating to Plaintiff "I think you have a lot of soul-searching to do, John." *See* Complaint at ¶¶27-29. Plaintiff claims

5

that he was subjected to unlawful discrimination on the basis of his religion, which had the effect of creating an intimidating, hostile or offensive working environment. *See id.* at ¶¶85-86.

To prove a religious harassment/hostile work environment claim either under Title VII or Chapter 151B, Plaintiff must establish that (1) the uninvited harassment was because of his religion and was sufficient severe and pervasive to affect the terms and conditions of employment; (2) the offending conduct was both objectively and subjectively offensive; and (3) there is a basis for employer liability. *Paul v. Johnson*, 2013 WL 5299399 at *10 (D. Mass. Sept. 17, 2013) (citing *Johnson v. Spencer Press of Me., Inc.*, 364 F.3d 368, 376 (1st Cir. 2004) (additional citations omitted). Plaintiff cannot meet any of these prongs. In the present case, Ms. Carstarphen's innocuous comment was neither severe nor pervasive, and the alleged offending conduct was not both objectively and subjectively offensive.

Whether the religious harassment Plaintiff claims he experienced was severe or pervasive "must be answered by reference to 'all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id*. (quoting *Johnson,* 365 F.3d at 377). The First Circuit "has emphasized that the standard for establishing such a claim "must be kept sufficiently demanding." *O'Rourke v. City of Providence*, 235 F.3d 713, 729 (1st Cir. 2001) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1988)). In the present case, it is alleged Ms. Carstarphen mentioned "soul-searching" on one occasion during a meeting in which she was referring Plaintiff to be trained on workplace bullying as a result of TriNetx's investigation finding him to have engaged in bullying. The comment was certainly not physically threatening or humiliating.

In fact, using the term "soul-searching" is common and inoffensive.  Courts throughout the country, including this Court, have used the term "soul-searching" in their written opinions.  For example, Judge Woodlock wrote in an opinion within the past year "the similar deficiencies in the claims processing presented in both this case and in *Hatfield* warrant 'a soul-searching discussion' for Defendants, as I suggested during the December 7, 2022 hearing." *K.D. v. Harvard Pilgrim Health Care, Inc.*, 2023 WL 2701689 at *8 (D. Mass. March 27, 2023); *see State of Tennessee v. Harris*, 2023 WL 5787306 at *3 (Tenn. Crim. App. Sept. 7, 2023) (informing Defendant "[y]ou need to do some soul searching. You're still a young man. You've got a lot of life in front of you…"); *Holden v. Burlington Northern, Inc.*, 665 F. Supp. 1398, 1401 (D. Minn. 1987) ("the Court, after considerable reflection and soul-searching, finds the proposed settlement to be fair . . . .").

"Such ambiguous and isolated remarks are insufficient to warrant a finding of religious harassment, discrimination, or an otherwise abusive or hostile workplace environment."  *MAP Installed Building Products of Seekonk, LLC v. Ivie*, 2020 WL 2737234 at *8 (2020) (bad jokes about polygamy and "the Catholic's church issues because [Plaintiff] was going to oversee young men" held insufficient) (citing *Faragher v. Boca Raton*, 524 U.S. 775, 788 (1998) (simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in terms and conditions of employment)).  The purported comment about soul-searching is "a prime example of 'offhand comments' that courts have uniformly found insufficient to establish a hostile workplace." *Karimpour v. Stanley Black and Decker, Inc.*, 2022 WL 1322566 at *5 (D. Mass. May 2, 2022) (citing *Sepulveda-Vargas v. Caribbean Restaurants, LLC*, 888 F.3d 549, 556 (1st Cir. 2018)).

7

Plaintiff argues that Defendants retaliated against him for engaging in conduct protected by Title VII and Chapter 151B. "Both Title VII and Chapter 151B contain provisions that prohibit employers from retaliating against persons who complain about unlawful discriminatory employment practices. *Salomon v. Massachusetts Housing Finance Agency*, 2023 WL 2588334 at *9 (D. Mass. March 21, 2023) (Burroughs, J.) (citing *Baer v. Montachusett Reg'l Tech. Sch. Dist.*, 380 F. Supp. 3d 153, 151 (D. Mass. 2019) (citing 42 U.S.C. § 2000e-3(a); Mass. Gen. Laws ch. 151B, § 4(4)). To make out a prima facie case of retaliation under Title VII, "a plaintiff must show that (i) he undertook protected conduct; (ii) he suffered an adverse employment action, and (iii) the two were causally linked." *Id*. (quoting *Noviello v. City of Boston*, 398 F.3d 76, 88 (1st Cir. 2005).

Even assuming that Plaintiff plausibly alleges he participated in oppositional conduct – which is questionable since he was in fact the individual accused of workplace bullying – Plaintiff's claim as to retaliation based upon religion fails as to Counts III and V because the Complaint does not plausibly allege a connection between his termination and a comment that he needed to engage in soul-searching.

For all of the foregoing reasons, Count III of the Complaint should be dismissed in its entirety and allegations in Count V regarding religion should be stricken.

### C. Plaintiff's Wage and Contractual Claims (Counts VI, VII, and VIII) Should be Dismissed

Counts VI (Massachusetts Wage Act), VII (Breach of Implied Contract), VIII (Breach of Good Faith and Fair Dealing) are all based on the same factual allegations. Specifically, Plaintiff alleges "upon information and belief," Defendants created his 2023 compensation plan after his separation from employment to provide him with lower commissions. Plaintiff admits he received a bonus payment after his termination of employment.

1.      Plaintiff's Massachusetts Wage Act Claims Fail

It is true that commissions may qualify as wages, sheltered by the Massachusetts Wage Act, in certain circumstances. *Klauber v. VMware, Inc.*, 80 F.4th 1, 11 (1st Cir. 2023) (citing *Parker v. EnerNOC, Inc.*, 484 Mass. 128, 139 N.E.3d 328, 333 (2020)) (emphasis added). "To separate wheat from chaff, we must start with the premise that commissions are 'contingent compensation.'" *Id*. (quoting *Mui v. Mass. Port. Auth.*, 478 Mass. 710, 89 N.E.3d 460, 463 (2018)). "Thus, the prophylaxis of the Wage Act applies to commissions only when 'two conditions [have been] met: (1) the amount of the commission 'has been definitely determined'; and (2) the commission has become due and payable.'" *Id*. (citing *Parker*, 139 N.E.3d at 333 (quoting Mass. Gen. Laws ch. 149, § 150)).

"A commission is "definitely determined" when it is "arithmetically determinable" taking into account the applicable formulas and deductions and the total from which deductions would be taken. But even if a commission is susceptible to definite determination, it is not "due and payable" until all "dependent contingencies have been met." *Klauber*, 80 F.4th at 11 (additional citations omitted). Plaintiff has alleged "upon information and belief" that Defendants created his 2023 compensation plan after his separation from employment to provide him with lower commissions. *See* Complaint at ¶56. Accordingly, by Plaintiff's own admission it was not definitely determined at the time of his separation. In fact, Plaintiff alleges no particular terms and conditions of the plan or that any specified amount was due and payable.

For the foregoing reasons, Count VI of the Complaint (Massachusetts Wage Act) should be dismissed with prejudice.

2.      Plaintiff Has Failed to State Claims for Breach of Implied Contract or Breach of Good Faith and Fair Dealing

9

To demonstrate a breach of contract, "the plaintiff must prove that a valid, binding contract existed, the defendant breached the terms of the contract, and the plaintiff sustained damages as a result of the breach." *Klauber*, 80 F.4th at 14 (quoting *Minturn v. Monrad*, 64 F.4th 9, 14 (1st Cir. 2023) (quoting *Young v. Wells Fargo Bank, N.A.*, 828 F.3d 26, 32 (1st Cir. 2016)). As for implied contracts, these require "the same elements as an express contract and differ[] only in the method of expressing mutual assent." *Massachusetts Eye and Ear Infirmary v. QLT Phototherapeutics, Inc.*, 412 F.3d 215, 229 (1st Cir. 2005). "In the prototypical implied contract cases, the terms are already sufficiently clear, and the court looks to the actions of the parties only to determine whether their actions indicate that they, in fact, agreed on those terms." *Id*.

In the present case, Plaintiff's breach of implied "contract claim is nothing more than a reframing of his Wage Act claims." *Klauber*, 80 F.4th at 14. Plaintiff has not described a binding contract existed, the terms of the contract, and the damages plaintiff sustained as a result. "The formation of a valid contract under Massachusetts law requires objective, not subjective, intent." *Id*. (quoting *Greene v. Ablon*, 794 F.3d 133, 147 (1st Cir. 2015)). Plaintiff's breach of contract claim based only on subjective belief fails as a matter of law.

As for Plaintiff's claim for breach of the covenant of good faith and fair dealing, it only governs conduct of parties after they have entered into a contract; without a contract there is no covenant to be breached. *Massachusetts Eye*, 412 F.3d at 230. For all of the above reasons, Counts VII of the Complaint (Breach of Implied Contract) and VIII (Breach of Good Faith and Fair Dealing) should be dismissed with prejudice.

### D. Plaintiff's Claim for FMLA Interference (Count I - ¶73) Should be Stricken and Plaintiff's Claim for MA PFMLA Retaliation (Count IV) Should be Dismissed

Plaintiff claims that Defendant interfered with his request for FMLA leave in Count I of the Complaint, and retaliated against him for purposes of the MA Paid Family and Medical Leave

Act (PFMLA) in Count IV of the Complaint, but the facts alleged do not support either claim. To make out a prima facie case for FMLA interference, the plaintiff must show that (1) he was eligible for the FMLA's protections; (2) his employer was covered by the FMLA; (3) he was entitled to leave under the FMLA; (4) he gave his employer notice of his intention to take leave; and (5) his employer denied him FMLA benefits to which he was entitled. *Chacon v. Brigham and Women's Hosp.*, 99 F. Supp. 3d 207, 213 (D. Mass. 2015). Similarly, to demonstrate retaliation under the PFMLA, the plaintiff must show that the employer "…discharge[ed], fir[ed], suspend[ed], expel[ed], discipline[ed],… threaten[ed] or in any other manner discriminat[ed] against an employee for exercising any right to which such employee is entitled under [the PFMLA] or with the purpose of interfering with the exercise of any right to which such employee is entitled under [the PFMLA]. *M.G.L. c. 175M §9*.

In the instant case, Plaintiff has not actually alleged that anyone denied him FMLA or PFMLA leave to which he was entitled. *See Kelley v. Massachusetts Bay Transportation Authority*, 2017 WL 10397970 at *4 (D. Mass. Sept. 5, 2017). Rather, he is apparently relying on the fact that TriNetX was informed that he was seeking qualification for intermittent FMLA leave, and by extension, PFMLA leave. Specifically, he alleges on March 27, 2023, Plaintiff "transmitted an email to Eagan informing her that he would be requesting "intermittent FMLA leave to attend appointments **as needed**." *See* Complaint at ¶49 (emphasis added). Ms. Eagan then copied Plaintiff on an email and instructed her colleague to assist Plaintiff with his FMLA intermittent qualification. *See id*. Plaintiff did not request specific times or days he was seeking to be absent. "An employee must 'provide notice to the employer for each medical absence in order for that absence to qualify as a protected activity under the FMLA." *See Kelley*, 2017 WL 10397970 at *5 (quoting *Lukacinsky v. Panasonic Serv. Co.*, 2004 WL 2915347 at *12 (D. Mass. Nov. 29,

11

2004) (emphasis in the original). In the absence of any allegation that Defendants were put on notice that he was seeking to take FMLA leave and was specifically denied such benefit, his claim for interference with his rights under the FMLA must be dismissed. *See id.* at *6.

For the above reasons, Plaintiff's claim for FMLA interference and PFMLA retaliation in Count I, ¶73 and Count IV of the Complaint, respectively, should be stricken.

### E. The Factual Allegations do not Support a Plausible Claim of Intentional Interference (Count XI) Against Ms. Carstarphen or Ms. Eagan.

Plaintiff has not alleged sufficient allegations to support a plausible claim of intentional interference. Generally, to establish a plausible claim for claim of intentional interference with contractual or advantageous business relations, the plaintiff must show that (1) she had a contract with a third party; (2) the defendant knowingly induced the third party to break that contract; (3) the defendant's interference, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant's actions. *Draghetti v. Chmielewski*, 416 Mass. 808, 816 (1994).

In the employment context, the SJC requires the plaintiff to prove more than intentional conduct. *Gram v. Liberty Mut. Ins. Co.*, 384 Mass. 659, 663–64 (1981). The plaintiff must show that a supervisor-defendant acted with "actual malice" and that the defendant's actions were wholly unrelated to the company's interests. *Id.*

#### 1. The Complaint Does Not Establish "Intentional" and "Malicious" Interference

To establish "actual malice" in this case, Plaintiff must allege that Ms. Carstarphen and Ms. Eagan acted with a "spiteful, malignant purpose, unrelated to the legitimate corporate interest." *Shea v. Emmanuel Coll.*, 425 Mass. 761, 764 (1997). In other words, Plaintiff must plausibly allege that these women took actions because they wanted to harm Plaintiff, not because they believed their actions benefitted TriNetX's business interests. *See id.; see also Weber v.*

*Cmty. Teamwork, Inc.*, 434 Mass. 761, 781 (2001) (requiring evidence that supervisor's behavior rose to the level of "personal hostility" or "ill-will" to sustain claim).

In *Gram*, the SJC explained that the "malice" standard protected supervisors against claims of intentional interference when they were acting in furtherance of their company's interests. *Id.* The SJC expressly limited a supervisor's liability to situations in which the supervisor took action unrelated to the company for the purpose of harming another employee. *Id.* Essentially, if the supervisor-defendant's "interference" occurs because he or she was performing his or her job duties, the plaintiff-employee cannot sustain a claim for intentional interference

The Complaint does not allege facts supporting a belief that Ms. Carstarphen or Ms. Eagan acted with actual malice, unrelated to TriNetX's interests. Plaintiff alleges the bare elements of the claim, but utterly fails to allege facts supporting the requirements outlined above. Alleging the elements of a claim, without more, leaves the claim subject to dismissal. Even accepting Plaintiff's allegations as true, and accepting all inferences in Plaintiff's favor, the only plausible conclusion is that Ms. Carstarphen and Ms. Eagan terminated Plaintiff's employment due to the findings of their investigation into his workplace misconduct. There is no factual allegation that Ms. Carstarphen or Ms. Eagan wanted to inflict harm upon Plaintiff, or that they terminated him due to personal hostility. These allegations are necessary to support Plaintiff's claim. *See Weber*, 434 Mass. at 781; *Gram,* 384 Mass. at 663–64. Without them, the claim is subject to dismissal.

### III.     CONCLUSION

For the foregoing reasons, Defendants request that this Court dismiss with prejudice Counts III, IV, VI, VII, VIII and XI, and strike portions of Counts I and V asserted in Plaintiff's Complaint.

Respectfully submitted,

Defendants TriNetX, LLC, Shields Carstarphen, and Jennifer Eagan

By their attorneys,

*/s/ Mark C. Preiss*

_____

Mark C. Preiss, BBO #670091
mpreiss@grsm.com
857-504-6105
Gordon Rees Scully Mansukhani, LLP
28 State Street, Unit 1050
Boston, MA  02109

DATED:  January 23, 2024

## CERTIFICATE OF SERVICE

I hereby certify that, on January 23, 2024, a true and accurate copy of the foregoing pleading, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

*/s/ Mark C. Preiss*

_____

Mark Preiss